UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------------------X
SHAUNCY CLAUD,                                          Index No.:

       Plaintiff,                                     Civil Action No. _____

    -against-                                          Complaint

BROWN HARRIS STEVENS RESIDENTIAL
SALES, LLC, and BROWN HARRIS STEVENS OF
THE HAMPTONS, LLC,

       Defendants.
---------------------------------------------------------------------------X

      Plaintiff Shauncy Claud ("Plaintiff"), by and through her attorneys, the Law Offices of G.

Oliver Koppell & Associates, complains of the above-named Defendants, Brown Harris Stevens

Residential Sales, LLC, and Brown Harris Stevens of the Hamptons, LLC ("Defendants"), for

violations of Civil Rights Law section 1981, and alleges as follows:

## NATURE OF THE CLAIMS

1. This is an action for declaratory and equitable relief, as well as monetary damages, to
   redress Defendants' discriminatory employment practices due to Plaintiff's race, as well
   as Defendant's retaliation against Plaintiff for complaining of Defendants' racially
   motivated discriminatory employment practices, in violation of Section 1981 of the Civil
   Rights Act of 1866, 42 U.S.C § 1981 ("Section 1981").

2. Over the course of Plaintiff's eight-month employment history with Defendants,
   Plaintiff's supervisor and colleagues repeatedly subjected Plaintiff to unlawful
   discrimination and harassment because of Plaintiff's race. Plaintiff complained of the
   racially motivated discrimination and harassment and in response was subject to unlawful
   retaliation from Defendants.

1

3.  Defendants' actions were wanton, reckless and intentional, with malice and without reason or basis. Defendants' actions were done with a conscious disregard for Plaintiff's civil rights, which has caused and continues to cause Plaintiff to suffer substantial economic and non-economic damages, permanent harm to her professional and personal reputation, and severe mental anguish and emotional distress.

## JURISDICTION AND VENUE

4.  The court has jurisdiction over this action pursuant to 28 U.S.C §§ 1331 and 1343, as this action involves federal questions regarding the deprivation of Plaintiff's civil rights under section 1981.

5.  Venue is proper in this district pursuant to 28 U.S.C § 1391 because a substantial part of the events or omissions giving rise to this action, including the unlawful discrimination and retaliation alleged herein, occurred in this district.

## PARTIES

6.  Plaintiff Shauncy Claud is an African-American female and at all times mentioned herein, was and still is a resident of the County of Suffolk, State of New York.

7.  That at all times mentioned herein, Defendant Brown Harris Stevens Residential Sales, LLC was and still is a domestic corporation organized and existing under the laws of the State of New York, with its principal place of business located at 770 Lexington Avenue, 4th Floor, New York, New York 10065.

8.  That at all times mentioned herein, Brown Harris Stevens Residential Sales, LLC transacted business within the State of New York and/or contracted to supply goods or services in the State of New York.

2

9.  That at all times mentioned herein, Defendant Brown Harris Stevens of the Hamptons, LLC (the "Hamptons Office") was and still is a domestic corporation organized and existing under the laws of the State of New York, with its principal place of business located at 24 Main Street, Southampton, New York 11968.

10. That at all times mentioned herein, the Hamptons Office transacted business within the State of New York and/or contracted to supply goods or services in the State of New York.

## FACTUAL ALLEGATIONS

11. Plaintiff is a thirty (30) year old African-American female.

12. Defendants are subsidiaries of a luxury residential real estate brokerage firm with offices nationwide.

13. On or about November 4, 2016, Plaintiff was hired as a real estate agent at Defendants' Hamptons Office.

14. Before joining the Hamptons Office, Plaintiff was an agent at Town and Country Real Estate ("T&C"). Plaintiff was employed there for two years from in or around November 2014 until November 2016. Upon information and belief, Plaintiff had roughly 400 open rentals and open sales while at T&C, and her Agent Profile was consistently within the top five of the most visited profiles on the T&C website.

15. Plaintiff left her position at T&C for a position at the Hamptons Office in order to earn a higher income.

16. At all times herein relevant, Plaintiff's direct supervisor at the Hamptons Office was Robert Nelson ("Mr. Nelson"), the Senior Managing Director.

17. At all times herein relevant, the Executive Managing Director of the Hamptons Office was Aspasia Comnas ("Ms. Comnas").

18. At all times herein relevant, The President of the Hamptons Office was Peter Turino ("Mr. Turino").

19. Commencing on or about November 4, 2016, multiple employees at the Hamptons Office, including, but not limited to, Mr. Nelson and Ms. Comnas, harassed, threatened, intimidated and discriminated against Plaintiff, due to Plaintiff's race.

20. In or around December 2016, Plaintiff's request for professional help was ignored by Plaintiff's supervisor, Mr. Nelson, who suggested that rather than asking him for help Plaintiff should instead google her questions.

21. In or around January 2017, Plaintiff was called a "Pitbull" by Mr. Nelson because Plaintiff "like[d] to take things from others." Specifically, Mr. Nelson was referencing Plaintiff's practice of updating residential listings. According to the BHS policy manual, updating a residential listing can generate income for an agent, but Mr. Nelson told Plaintiff to update only old listings that did not have "big names." Nothing in the BHS policy manual suggested that Plaintiff was limited to updating only old listings, rather, Plaintiff was clearly entitled to update any listing she did work on pursuant to the BHS policy manual,

22. Upon information and belief, Mr. Nelson did not treat other similarly situated agents the same way he treated Plaintiff. Upon information and belief, Mr. Nelson did not tell other similarly situated agents to stick to old listings that do not have "big names," but instead only told that to Plaintiff. Other, similarly situated agents, such as Ian Dios ("Mr. Dios"),

for example, were free to update listings regularly without issue and without receiving negative feedback.

23. In or around February 2017, Plaintiff properly updated a high-end rental listing that would potentially generate income for Plaintiff after speaking with the owner. Mr. Nelson, however, refused to acknowledge and give credit to Plaintiff for the work Plaintiff had done, and instead gave the credit to another agent.

24. On or about March 12, 2017, Mr. Nelson agreed to accompany Plaintiff to a sales pitch with a homeowner. Halfway through Plaintiff's pitch, however, Mr. Nelson got up and left with no explanation. Because of Mr. Nelson's unprofessional conduct, Plaintiff did not get the rights to list the home.

25. In or around March 2017, Plaintiff observed that the property at 117 Pulaski Street, Southampton, NY, 11968 ("117 Pulaski") was updated and listed as an "Open Sale" by Christopher Burnside ("Mr. Burnside"), another agent at the Hamptons Office. Plaintiff mentioned this to the homeowner, who Plaintiff was familiar with. The homeowner told Plaintiff that they had never met or spoken to Mr. Burnside, nor had they given him or the Hamptons Office permission to list their property as an "Open Sale."

26. Upon information and belief, Plaintiff would soon be bringing this property on as an exclusive listing pursuant to her correspondence with the owners. Having another agent, Mr. Burnside, update the listing would mean that Mr. Burnside would receive part of the exclusive listing agent's commission, 100% of which would have been owed to Plaintiff as the exclusive listing agent.

27. When Plaintiff brought her concerns to Mr. Nelson, he disregarded them and insisted it was alright if Mr. Burnside was still associated with the property and received part of

Plaintiff's exclusive listing agent's commission. Only after the homeowner personally contacted the Hamptons Office to rectify this situation was any action taken to address Plaintiff's concerns.

28. On or about March 21, 2017, 117 Pulaski became Plaintiff's exclusive listing. Plaintiff contacted Mr. Nelson to set up a meeting during office hours to review proper procedure when an agent receives an exclusive listing. 117 Pulaski was Plaintiff's first exclusive listing with BHS and for a high value that Plaintiff did not have much experience with. Mr. Nelson declined the meeting and was otherwise unresponsive to Plaintiff's request for assistance.

29. Upon information and belief, in or around March 2017, Plaintiff became aware that another agent from the Hamptons Office was discussing Plaintiff's style of dress with other agents and suggesting that Plaintiff wear more effeminate clothing in an effort to look "more presentable."

30. In or around March 2017, Plaintiff disclosed to a senior BHS agent, Mark Baron (Mr. Baron"), that she was not getting the support she felt she needed at BHS. Mr. Baron stated to Plaintiff that Mr. Nelson should be helping her.

31. On or about May 4, 2017, the President of the Hamptons Office, Mr. Turino, was at a listing appointment with Plaintiff when he commented that Mr. Nelson was a "good manager." Plaintiff disagreed and stated that she felt she wasn't receiving the same support she saw Mr. Nelson providing to other agents at the Hamptons Office. Mr. Turino laughed off Plaintiff's concerns.

32. Upon information and belief, during Plaintiff's tenure with Defendant, upper management, and specifically Mr. Nelson, intentionally failed to include Plaintiff's name

6

on the "Up Board" for lead generation. The Up Board was a board which rotated the names of all agents in the Hamptons Office, affording those agents leads in the form of individuals walking into the office or calling the office to inquire regarding availability of residential sales or rentals.

33. Mr. Turino informed Plaintiff that she was not being included on the Up Board for reasons unbeknownst to him. Mr. Turino said he would speak to Mr. Nelson, who controlled the Up Board, because Plaintiff's name should be included on the Up Board. Plaintiff's name, however, failed to appear on the Up Board throughout the rest of her employment at the Hamptons Office even after speaking to Mr. Turino.

34. Upon information and belief, the reason Plaintiff was the victim of a broad pattern of discrimination and improper conduct at BHS was because of her race.

35. On or about June 14, 2017, Plaintiff told Ms. Comnas that Plaintiff felt discriminated against by Mr. Nelson because of her race. On top of the instances listed above, Mr. Nelson had previously said to Plaintiff that she was "the only black agent in the Hamptons."

36. On or about June 18, 2017, Plaintiff was involved in a minor incident at a restaurant where she was alleged to have thrown a glass, and was arrested by Southampton Town Police. The Southampton Press published an article about the arrest later that week.

37. On or about June 19, 2017, Plaintiff asked Mr. Nelson to come to a meeting with a client to discuss pricing issues, and so that the client could meet a member of the Hamptons Office management team. Mr. Nelson declined and instead suggested Plaintiff write a letter to the client to discuss the pricing issue.

38. Upon information and belief, Mr. Nelson did not treat other similarly situated agents the same way he treated Plaintiff. Upon information and belief, Mr. Nelson had met the homeowners of properties upon request from other similarly situated agents at the Hamptons Office.

39. On or about June 22, 2017, Plaintiff notified Mr. Turino and Mr. Nelson that she had been involved in the June 18, 2017, incident referenced in paragraph 36 and had been arrested and charged, that she had retained defense counsel, and that she was confident the charges would be dropped. Neither Mr. Turino nor Mr. Nelson responded to Plaintiff's correspondence.

40. On or about June 30, 2017, Ms. Claud was inexplicably and unlawfully terminated by Defendant. On or about June 30, 2017, an email was sent to the BHS email list-serve stating, "Shauncy Claud is no longer associated with Brown Harris Stevens." Plaintiff also received a personal SMS text message and email from Ms. Comnas stating Plaintiff had been terminated.

41. Upon information and belief, Plaintiff was terminated from her position at the Hamptons Office under the pretext of having been arrested. Other similarly situated non-African-American agents, however, did not receive the same treatment as Plaintiff after having been arrested.

42. In or around 2013, a Caucasian female agent from the Hamptons Office was arrested for also throwing a glass, and her arrest was also publicized. This agent, unlike Plaintiff, was not terminated and still works at the Hamptons Office. In or around August 2017, another Caucasian female agent from the Hamptons Office was arrested, and her arrest

was also publicized. Again, this agent, unlike Plaintiff, was not terminated and still works at the Hamptons Office.

43. Upon information and belief, Plaintiff was the victim of employment discrimination and wrongful and unlawful termination based upon her African-American heritage.

44. Upon information and belief, similarly situated non-African-American coworkers did not suffer the same significant disadvantages which were faced by Plaintiff.

45. As a result of Plaintiff's wrongful termination, she incurred a substantial loss of commissions and income.

46. Upon information and belief, after Plaintiff was terminated Defendants continued to discriminate and retaliate against and harass Plaintiff by contacting other potential employers and advising them not to hire Plaintiff.

47. Upon information and belief, Defendants also intentionally ignored Plaintiffs request to have her 1099 tax form mailed to a P.O. Box, and instead delivered it in person to Plaintiff's current office in an unsealed envelope exposing sensitive personal information to Plaintiff's new colleagues.

48. Plaintiff maintained a strong job performance throughout her tenure with Defendant despite the broader pattern of improper conduct she was subject to. The owners of 117 Pulaski informed Plaintiff after she had been terminated that they were much happier with Plaintiff's representation of their property rather than the new agent assigned by Mr. Nelson.

49. During her tenure at the Hamptons Office, Plaintiff had either open or exclusive listings at 79 Monroe Drive, Montauk; 29 Captain Kidds Path, Montauk; 103 High Pond Lane, Southampton; 110 Montauk Highway, Water Mill; 196 Country Road 39A,

Southampton; 5 Shorewood Court, East Hampton; 6 Hickory Court, East Hampton; 394 North Magee Street, Southampton; 470 North Magee Street, Southampton; 726 Flying point Road, Water Mill; and 724 Dune Road, Westhampton Dunes, as well as other properties.

## AS AND FOR A FIRST CAUSE OF ACTION FOR DISCRIMINATION BASED UPON RACE IN VIOLATION OF CIVIL RIGHTS LAW SECTION 1981

50. Plaintiff re-alleges and incorporates all the facts and allegations expressed above as if alleged and incorporated herein.

51. The foregoing acts of Defendants constituted unlawful discrimination in violation of Civil Rights Law § 1981.

52. Upon information and belief, Plaintiff's race was the determining factor in her employment discrimination and wrongful and unlawful termination.

53. Other similarly situated non-African-American real estate agents received more favorable treatment from Defendants.

54. Any reason advanced by Defendants for Plaintiff's wrongful and unlawful treatment and expulsion is pretext for discrimination. Upon information and belief, Plaintiff's membership in a protected class was the reason for this disparate treatment, harassment and discrimination.

55. By reason of the foregoing, Plaintiff has suffered and continues to suffer from severe anxiety, emotional distress, loss of income, lasting embarrassment, humiliation, mental and physical anguish, loss of enjoyment of life and other incidental and consequential damages and expenses.

56. Defendant's actions were wanton, reckless and intentional, with malice and without reason or basis, and were done with a conscious disregard for Plaintiff's civil rights, entitling Plaintiff to an award of punitive damages.

## AS AND FOR A SECOND CAUSE OF ACTION FOR RETALIATION IN VIOLATION OF CIVIL RIGHTS LAW SECTION 1981

57. Plaintiff re-alleges and incorporates all the facts and allegations expressed above as if alleged and incorporated herein.

58. The foregoing acts of Defendants constituted unlawful retaliation in violation of Civil Rights Law § 1981.

59. Plaintiff engaged in protected activity when she complained to Ms. Comnas on or about June 14, 2017, that she felt discriminated against by Mr. Nelson because of her race.

60. Approximately two weeks later, on or about June 30, 2017, Plaintiff suffered an adverse employment action when she was wrongfully and unlawfully terminated for engaging in protected activity by complaining to her superiors about race-based employment discrimination.

61. Plaintiff maintained a strong job performance during her tenure at the Hamptons Office and never received a negative employment review.

62. Any reason advanced by Defendant for Plaintiff's wrongful and unlawful treatment and expulsion is pretext for retaliation. Upon information and belief, Plaintiff's engaging in protected activity was the reason for her wrongful and unlawful termination.

63. By reason of the foregoing, Plaintiff has suffered and continues to suffer severe anxiety, emotional distress, loss of income, lasting embarrassment, humiliation, mental and physical anguish, loss of enjoyment of life and other incidental and consequential damages and expenses.

64. Defendant's actions were wanton, reckless and intentional, with malice and without reason or basis, and were done with a conscious disregard for Plaintiff's civil rights, entitling Plaintiff to an award of punitive damages.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court grant the following relief with respect to each of the foregoing Causes of Action:

1. Declaring that the acts, policies and practices complained of herein are in violation of Federal Civil Rights Law § 1981;

2. Directing Defendant to place Plaintiff in the position that she would have occupied but for Defendant's unlawful conduct and making Plaintiff whole for all earnings she would have received but for Defendant's unlawful conduct, including but not limited to, commissions, bonuses, and other lost benefits in an amount to be determined at trial;

3. Directing Defendant to pay Plaintiff compensatory damages in an amount of $500,000;

4. Directing Defendant to pay Plaintiff punitive damages in an amount of $500,000;

5. Awarding Plaintiff reasonable attorneys' fees and costs;

6. Awarding Plaintiff such interest as is allowed by law; and

7. Granting such other and further relief as this Court deems necessary and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: March 5, 2018
New York, NY

12

LAW OFFICES OF G. OLIVER
KOPPELL & ASSOCIATES

By: _____
G. Oliver Koppell
Daniel F. Schreck
*Counsel for Plaintiff*
99 Park Avenue, Suite 1100
New York, NY 10016
Telephone:  (212) 867-3838
Facsimile:  (212) 681-0810