Andrew P. Saulitis
LAW OFFICES OF
ANDREW P. SAULITIS P.C.
*Attorneys for Defendants*
*Brown Harris Stevens Residential Sales, LLC and*
*Brown Harris Stevens of the Hamptons, LLC*
40 Wall Street-37th Floor
New York, New York 10005
(212) 459-0900
apslaw@msn.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

**SHAUNCY CLAUD,**

                              Plaintiff,

                                                          2:18-cv-01390-DRH-AKT

              —against—

**BROWN HARRIS STEVENS RESIDENTIAL
SALES, LLC, and BROWN HARRIS STEVENS OF
THE HAMPTONS, LLC,**

                              Defendants.

-----------------------------------------------------------------x

## <u>ANSWER</u>

       Defendants Brown Harris Stevens Residential Sales, LLC ("BHS")[1] and Brown

Harris Stevens of the Hamptons, LLC ("BHS-Hamptons"), by their attorneys the Law

Offices of Andrew P. Saulitis P.C., answering the complaint of plaintiff Shauncy Claud

---

[1]Plaintiff had no association whatsoever with BHS. All averments in this answer on its behalf are upon information and belief, and it lacks knowledge or information sufficient to form a belief about any allegations of the complaint, except as to the lack of any association.

("Ms. Claud"), aver as follows, which averments are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery:

Defendants generally deny the allegations of the complaint regarding discrimination, regarding Ms. Claud's race or any other protected category. While Ms. Claud was accorded every opportunity for success as a real estate agent with BHS-Hamptons, her association with it (as an independent contractor) was lawfully terminated on June 30, 2017, because of credible complaints received by clients regarding her rude conduct toward them, jeopardizing BHS-Hamptons' client relationships.

1.  Paragraph 1 of the complaint, headed "Nature of the Action," is Ms. Claud's attorneys' description of the purported nature of this action, to which no response is required. To the extent that said paragraph contains any substantive/factual allegations, defendants generally deny same and specifically deny that Ms. Claud was "employed" by defendants or that the action involves or arises out of "employment" or "employment practices," Ms. Claud having been an independent contractor and not an employee of either of the defendants (and having had no relationship at all with BHS.

2.  Defendants deny the allegations of paragraph 2 of the complaint or that Ms. Claud was an employee or had an "employment history" with defendants.

3.  Defendants deny the allegations of paragraph 3 of the complaint.

4.   Paragraph 4 of the complaint contains allegations of the Court's subject matter jurisdiction to which defendants are not required to respond and deny that they deprived Ms. Claud of any "civil rights" protected by 42 U.S.C § 1981 or any other law.

5.   Paragraph 5 of the complaint contains allegations as to the basis of the venue for this action, which defendants do not contest. However, defendants deny the existence of any "events or omissions" that allegedly "giv[e] rise to this action" including any "unlawful discrimination."

6.   Defendants lack knowledge or information sufficient to form a belief about the allegations of paragraph 6 of the complaint.

7.   Defendants deny the allegations of paragraph 7 of the complaint except admit that BHS has offices, among other places, at 770 Lexington Avenue, New York, New York 10065.

8.   Defendants deny the allegations of paragraph 8 of the complaint except admit that BHS has transacted business within the State of New York and contracted to supply services in the State of New York, but deny that BHS transacted any business with Ms. Claud.

9.   Defendants deny the allegations of paragraph 9 of the complaint except admit that BHS-Hamptons has offices, among other places, at 24 Main Street, Southampton,

New York 11968.

10.  Defendants deny the allegations of paragraph 10 of the complaint except admit that BHS-Hamptons has transacted business within the State of New York and has contracted to supply services in the State of New York.

11.  Defendants lack knowledge or information sufficient to form a belief about the allegations of paragraph 11 of the complaint.

12.  Defendants deny the allegations of paragraph 12 of the complaint.

13.  Defendants deny the allegations of paragraph 13 of the complaint except admit that from approximately November 7, 2016 through June 30, 2017, Ms. Claud was associated with BHS-Hamptons as an independent contractor, under the terms of Independent Agent Agreements dated November 7, 2016 and April 10, 2017 between BHS-Hamptons and Ms. Claud. (Ms. Claud had no relationship of any kind with BHS, contractual or otherwise.).

14.  Paragraph 14 of the complaint violates Fed. R. Civ. P. 8 (d) (1) in that it is not simple, concise, and direct and violates Fed. R. Civ. P. 10 (b) in that it is not limited to a single set of circumstances. Defendants lack knowledge or information sufficient to form a belief about the allegations of said paragraph.

15.  Defendants lack knowledge or information sufficient to form a belief about

the allegations of paragraph 15 of the complaint.

16.   Defendants deny the allegations of paragraph 16 of the complaint except admit that Robert M. Nelson was and is Senior Managing Director and Associate Broker of BHS-Hamptons with attendant duties and responsibilities at its offices at 24 Main Street, Southampton, New York 11968.

17.   Defendants deny the allegations of paragraph 17 of the complaint except admit that Aspasia G. Comnas was and is an Associate Broker and Executive Managing Director of BHS-Hamptons at 2408 Main Street, Bridgehampton, New York 11932 with attendant duties and responsibilities.

18.   Defendants deny the allegations of paragraph 18 of the complaint except admit that Peter M. Turino was and is President and Broker of Record of BHS-Hamptons with attendant duties and responsibilities, at its offices at 27 Main Street, East Hampton, New York 11937.

19.   Defendants deny the allegations of paragraph 19 of the complaint.

20.   Defendants deny the allegations of paragraph 20 of the complaint and aver that Robert M. Nelson provided an extraordinary amount of guidance and assistance to Ms. Claud throughout her association with BHS-Hamptons.

21.   Paragraph 21 of the complaint violates Fed. R. Civ. P. 8 (d) (1) in that it is

not simple, concise, and direct and Fed. R. Civ. P. 10 (b) in that it is not limited to a single set of circumstances. Defendants deny the allegations of said paragraph except refer to the "policy manual" referred to for a statement of its contents.

22.  Paragraph 22 of the complaint violates Fed. R. Civ. P. 8 (d) (1) in that it is not simple, concise, and direct and Fed. R. Civ. P. 10 (b) in that it is not limited to a single set of circumstances. Defendants deny the allegations of said paragraph.

23.  Defendants deny the allegations of paragraph 23 of the complaint.

24.  Defendants deny the allegations of paragraph 24 of the complaint except admit that in or about March 2017 Robert M. Nelson accompanied Ms. Claud to a "sales pitch" with a homeowner at 40 Broadway, Southampton, New York, at which Mr. Nelson expressed to the homeowner his belief that the homeowner would be in excellent hands with Ms. Claud.

25.  Defendants lack knowledge or information sufficient to form a belief about the allegations of paragraph 25 of the complaint.

26.  Defendants deny the allegations of paragraph 26 of the complaint and refer to the company manual for a statement of listing and referral fees payable to agents in connection with conversions from "open" to "exclusive" listings and division of same among agents.

27.   Defendants deny the allegations of paragraph 27 of the complaint and refer to the company manual for a statement of listing and referral fees payable to agents in connection with conversions from "open" to "exclusive" listings and division of same among agents.

28.   Defendants deny the allegations of paragraph 28 of the complaint and specifically deny that Robert M. Nelson declined any meeting or that he was unresponsive to Ms. Claud's request(s) for assistance regarding "117 Pulaski," and aver, to the contrary that Mr. Nelson gave Ms. Claud repeated and continual assistance with such listing and to her many inquiries, questions, comments, discussing the listing on a regular basis as to how best to market this property.

29.   Defendants lack knowledge or information sufficient to form a belief about the allegations of paragraph 29 of the complaint.

30.   Defendants lack knowledge or information sufficient to form a belief about the allegations of paragraph 30 of the complaint except deny that Robert M. Nelson was unhelpful to Ms. Claud and aver, upon information and belief, that Mr. Nelson accorded Ms. Claud an extraordinary amount of guidance and support during her association with BHS-Hamptons.

31.   Defendants deny the allegations of paragraph 31 of the complaint or that Ms. Claud did not receive support from Robert M. Nelson or that the support she received

was in any material respect less than that accorded other agents.

32.  Defendants deny the allegations of paragraph 32 of the complaint or that Ms. Claud accurately describes the "up board" or its function.

33.  Defendants deny the allegations of paragraph 33 of the complaint or that Ms. Claud was excluded from the normal procedures for inclusion in the "up board."

34.  Defendants deny the allegations of paragraph 34 of the complaint.

35.  Defendants deny the allegations of paragraph 35 of the complaint.

36.  Defendants lack knowledge or information sufficient to form a belief about the allegations of paragraph 36 of the complaint except admit, upon information and belief, that on or about June 18, 2017, Ms. Claud was publicly reported to have been involved in an incident at a restaurant in Southampton resulting in her arrest by Southampton Town Police and refer to the article referred to in The Southampton Press for a statement of its content.

37.  Defendants lack knowledge or information sufficient to form a belief about the allegations of paragraph 37 of the complaint as to what "meeting" with what "client" is referred to and deny that Robert M. Nelson "declined and instead suggested Plaintiff write a letter to the client" instead of a face-to-face meeting.

38.  Defendants lack knowledge or information sufficient to form a belief about the allegations of paragraph 38 of the complaint as to who the alleged "other similarly situated agents" were or how they were allegedly "treated" and otherwise deny the allegations of said paragraph.

39.  Defendants deny the allegations of paragraph 39 of the complaint except admit that on June 22, 2017 Ms. Claud sent an email to Robert M. Nelson stating: "There was an alleged incident that you may be made aware of involving myself at Gators. I've been advised by counsel to not speak on the matter. I've never been in a situation like this and I'm taken aback by the allegations being made against me. What's being said is entirely untrue and I'll be working with counsel to have the situation dropped immediately." (The email did not invite any response or action from Mr. Nelson.) Defendants lack knowledge or information sufficient to form a belief about the circumstances of the arrest or as to the disposition of any criminal proceedings against Ms. Claud but deny that this  was the reason for termination of her association with BHS-Hamptons.

40.  Defendants deny the allegations of paragraph 40 of the complaint except admit that on June 30, 2017, Ms. Claud was given written notice by BHS-Hamptons that her association under her Independent Agent Agreement was terminated, effective immediately, which notice was given by email dated June 30, 2017, to which defendants

refer for a statement of its content. Such notice was duly given (and received) in accordance with the Independent Agent Agreement governing the terms of Ms. Claud's association with BHS-Hamptons, to which defendants refer, which agreement provided, among other things, that "[t]his Agreement and the association created thereby may be terminated by either party thereto at any time for any or no reason upon written notice given to the other."

41.  Defendants deny the allegations of paragraph 41 of the complaint or that her "having been arrested" was the reason for the termination of Ms. Claud's Independent Agent Agreement or that Ms. Claud was treated disparately on the basis of her race or any other protected category or that BHS-Hamptons has terminated any agent (including Ms. Claud) on the basis of having been "arrested."

42.  Defendants lack knowledge or information sufficient to form a belief about the allegations of paragraph 42 of the complaint either as to the circumstances of the (unidentified) "Caucasian female agent from the Hamptons Office" having been "arrested" in 2013 "for . . . throwing a glass" or another (unidentified) "Caucasian female agent from the Hamptons Office" having been "arrested" in August 2017 except admit that no agents from "the Hamptons Office" of BHS-Hamptons (including Ms. Claud) have been terminated on account of having been arrested and specifically deny that Ms. Claud's "having been arrested" was the reason for the termination of her Independent

Agent Agreement or that Ms. Claud was treated disparately on the basis of her race (or any other protected category) in connection with termination or as to any other aspect of her association.

43.  Defendants deny the allegations of paragraph 43 of the complaint.

44.  Defendants lack knowledge or information sufficient to form a belief as to what "similarly situated non-African-American coworkers" are referred to in paragraph 44 of the complaint, how they were "similarly situated," what similar situations(s) are referred to or what "same significant disadvantages . . . were faced by Plaintiff" and otherwise deny the allegations of said paragraph and specifically deny that Ms. Claud was disparately treated on the basis of her race (or any other protected category) in connection with the entry into, performance of or termination of her Independent Agent Agreement with BHS-Hamptons.

45.  Defendants deny the allegations of paragraph 45 of the complaint or that her Independent Agent Agreement was "wrongfully terminated" or that she "incurred a substantial loss of commissions and income," Ms. Claud having only two exclusive listings at the time, neither of which resulted in a sale.

46.  Defendants deny the allegations of paragraph 46 of the complaint.

47.  Defendants deny the allegations of paragraph 47 of the complaint except

-11-

admit that a sealed envelope was delivered to Ms. Claud's attention to her office next door and lack knowledge or information sufficient to form a belief about the allegations of said paragraph as to what "sensitive personal information" was allegedly "exposed" to "Plaintiff s [unidentified] new colleagues."

48.   Defendants lack knowledge or information sufficient to form a belief about the allegations of paragraph 48 of the complaint as to what, if anything "[t]he owners of 117 Pulaski informed Plaintiff" and otherwise deny the allegations of said paragraph, except, to the contrary, the owners of the property informed BHS-Hamptons that Ms. Claud had sought to have them terminate their listing with BHS-Hamptons but that they were pleased with BHS-Hamptons and the new agent and declined to release the listing from BHS-Hamptons.

49.   Defendants deny the allegations of paragraph 49 of the complaint except admit that at the time of the termination of Ms. Claud's association, she had only two exclusive listings, neither of which has resulted in a sale.

50.   Responding to paragraph 50 of the complaint, defendants incorporate by reference their responses above to the paragraphs realleged.

51.   Defendants deny the allegations of paragraph 51 of the complaint.

52.   Defendants deny the allegations of paragraph 52 of the complaint or that any

-12-

"employment" was involved.

53.   Defendants lack knowledge or information sufficient to form a belief about the allegations of paragraph 53 of the complaint as to what "[o]ther similarly situated non-African-American real estate agents" are referred to or what "treatment" is referred to and otherwise deny the allegations of said paragraph.

54.   Defendants deny the allegations of paragraph 54 of the complaint.

55.   Defendants deny the allegations of paragraph 55 of the complaint and lack knowledge or information sufficient to form a belief about the allegations of said paragraph as to what "anxiety, emotional distress, loss of income, lasting embarrassment, humiliation, mental and physical anguish, loss of enjoyment of life" etc. Ms. Claud claims to have "suffered" and deny that any of this was caused by any conduct on the part of defendants.

56.   Defendants deny the allegations of paragraph 56 of the complaint.

57.   Responding to paragraph 57 of the complaint, defendants incorporate by reference their responses above to the paragraphs realleged.

58.   Defendants deny the allegations of paragraph 58 of the complaint.

59.   Defendants deny the allegations of paragraph 59 of the complaint.

-13-

60. Defendants deny the allegations of paragraph 60 of the complaint or that there was any "adverse employment action" or that any "employment" was involved, Ms. Claud having been an independent contractor under the terms of an Independent Agent Agreement.

61. Defendants deny the allegations of paragraph 61 of the complaint or that there was "employment" involved or any incidents of an employment relationship, Ms. Claud having been an independent contractor under the terms of an Independent Agent Agreement.

62. Defendants deny the allegations of paragraph 62 of the complaint.

63. Defendants deny the allegations of paragraph 63 of the complaint and lack knowledge or information sufficient to form a belief about the allegations of said paragraph as to what "anxiety, emotional distress, loss of income, lasting embarrassment, humiliation, mental and physical anguish, loss of enjoyment of life" *etc*. Ms. Claud claims to have "suffered" and deny that any of this was caused by any conduct on the part of defendants.

64. Defendants deny the allegations of paragraph 64 of the complaint.

FIRST AFFIRMATIVE DEFENSE

65. The complaint, in whole or in part, fails to state a claim upon which relief

can be granted.

## SECOND AFFIRMATIVE DEFENSE

66.  The complaint violates Fed. R. Civ. P. 8 (d) (1) in that its allegations are not simple, concise, and direct and violates Fed. R. Civ. P. 10 (b) in that its paragraphs are not limited to a single set of circumstances.

## THIRD AFFIRMATIVE DEFENSE

67.  Ms. Claud was not employed by nor an employee of either BHS-Hamptons or BHS.

68.  Ms. Claud's association with BHS-Hamptons was that of an independent contractor under an Independent Agent Agreement dated April 10, 2017 providing, among other things, that "[t]his Agreement and the association created thereby may be terminated by either party thereto at any time for any or no reason upon written notice given to the other." (Ms. Claud had no relationship of any kind with BHS, contractual or otherwise.)

69.  Ms. Claud's Independent Agent Agreement was terminated by BHS-Hamptons by written notice given June 30, 2017.

70.  Such termination was lawful under the terms of the Independent Agent

Agreement.

## FOURTH AFFIRMATIVE DEFENSE AND PROFFERED REASON

71.  BHS-Hamptons' lawful reason for termination of the Independent Agent Agreement was that it had received a credible complaint on June 29, 2017 from a client regarding Ms. Claud's rude conduct toward the client and a family member, which jeopardized the client relationship, which followed earlier client complaints regarding Ms. Claud's conduct.

## FIFTH AFFIRMATIVE DEFENSE

72.  Ms. Claud's claimed damages are barred or limited by after-acquired evidence.

## SIXTH AFFIRMATIVE DEFENSE

73.  Ms. Claud had no association, contractual or otherwise, with BHS.

74.  Therefore there was and is no basis, factual or legal, for any claim against BHS under 42 U.S.C. § 1981 or any related statute, and thus any such claim by Ms. Claud is frivolous under Fed. R. Civ. P. 11(b)(1)-(3) and 42 U.S.C. § 1988 and is a multiplication of proceedings in this case unreasonably and vexatiously within the meaning of 28 U.S.C. § 1927, and continuation of same.

75.  Demand is made for immediate withdrawal of such claims.

## SEVENTH AFFIRMATIVE DEFENSE

76.  Ms. Claud has failed to mitigate her claimed damages, her entitlement to any being expressly denied.

## EIGHTH AFFIRMATIVE DEFENSE

77.  Ms. Claud's claims are barred, in whole or in part, by waiver, estoppel, ratification and/or unclean hands/inequitable conduct on Ms. Claud's part.

## NINTH AFFIRMATIVE DEFENSE

78.  BHS-Hamptons duly honored and has performed all of its obligations to Ms. Claud under the Independent Agent Agreement.

## TENTH AFFIRMATIVE DEFENSE

79.  Most, if not all, of the matters complained of by Ms. Claud are not actionable because they did not constitute adverse action on the part of BHS-Hamptons (or BHS), nor did they deny any contractual rights of Ms. Claud under her Independent Agent Agreement and are thus not actionable under 42 U.S.C. § 1981.

ELEVENTH AFFIRMATIVE DEFENSE

80.  In entering into the Independent Agent Agreement with Claud, BHS-Hamptons accorded Ms. Claud the same right to make and enforce such contract, to sue, to be a party, to give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and to be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other, including includes the making, performance, modification, and termination of such contract, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

81.  Accordingly, defendants did not impair any right accorded Ms. Claud under 42 U.S.C. § 1981, and are not liable thereunder.

TWELFTH AFFIRMATIVE DEFENSE

82.  Defendants did not commit any acts of intentional discrimination against Ms. Claud, nor did they knowingly tolerate any such acts on the part of any other person over which they had control or supervision.

THIRTEENTH AFFIRMATIVE DEFENSE

83.  Defendants did not engage in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an

aggrieved individual.

## FOURTEENTH AFFIRMATIVE DEFENSE

84. BHS-Hamptons would have made the same decision with respect to Ms. Claud's agreement termination irrespective of racially discriminatory motive (the existence of which is categorically denied) and BHS-Hamptons would have treated Ms. Claud the same irrespective of her race (*i.e.*, the "same decision" affirmative defense is asserted hereby).

## FIFTEENTH AFFIRMATIVE DEFENSE

85. 42 U.S.C. § 1981 requires proof of intentional discrimination. Thus, there is and can be no claim for disparate impact available under section 1981.

## SIXTEENTH AFFIRMATIVE DEFENSE

86. Ms. Claud did not engage in protected activity so as to support a claim for "retaliation" (which, in any event, is denied) nor did defendants retaliate against Ms. Claud for anything.

## SEVENTEENTH AFFIRMATIVE DEFENSE

87. BHS-Hamptons engaged in good faith efforts to comply with the law by implementing policies and procedures designed to prevent unlawful discrimination in the

workplace.

## EIGHTEENTH AFFIRMATIVE DEFENSE

88.  Ms. Claud's claim for punitive damages, to the extent of any award thereunder, may violate the Fifth, Eighth and/or Fourteenth Amendments of the United States Constitution and defendants reserve all defenses thereto on the grounds of unconstitutionality, excessiveness and denial of Due Process.

## NINETEENTH AFFIRMATIVE DEFENSE

89.  This action is barred by primary agency jurisdiction in that Ms. Claud has filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission (EEOC) under Charge No. 520-2018-01703, which charge remains pending.

## TWENTIETHAFFIRMATIVE DEFENSE

90.  Ms. Claud has, in writing, waived any claim to trial by jury.

## TWENTY-FIRST AFFIRMATIVE DEFENSE

91.  The Court should decline to exercise supplemental jurisdiction, to the extent any supplemental or pendent claims are asserted.

## **Counterclaims for Costs and Attorney's Fees**

-20-

92.  Under 42 U.S.C. § 1988(b), "[i]n any action or proceeding to enforce a provision of section[] 1981 . . . of this title [42] . . . the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs . . . ."

93.  Defendants, to the extent that either of them be a prevailing party in this action, is entitled to a reasonable attorney's fee as part of costs as against Ms. Claud.

94.  Under 28 U.S.C. § 1927, "[a]ny attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."

95.  Ms. Claud's attorney(s) have multiplied the proceedings in this case unreasonably and vexatiously, particularly as to commencing and continuing this action against BHS, which had no contractual or other relationship with Ms. Claud.

96.  Demand is made that such claims immediately be withdrawn.

**Demand for Judgment:** Defendants Brown Harris Stevens Residential Sales, LLC and Brown Harris Stevens of the Hamptons, LLC demand judgment in their favor and against plaintiff Shauncy Claud dismissing the complaint and this action with prejudice; and, and as to each claim to which a defendant is the prevailing party,

-21-

awarding costs including a reasonable attorney's fee against plaintiff pursuant to 42

U.S.C. § 1988(b), and, pursuant to 28 U.S.C. § 1927, to the extent not withdrawn,

judgment against plaintiff's attorney(s) that they be required to satisfy personally the

excess costs, expenses, and attorneys' fees reasonably incurred because of conduct

multiplying the proceedings unreasonably and vexatiously; and granting such other and

further relief as the Court deems just and equitable.

Dated:  April 16, 2018

_____
Andrew P. Saulitis

LAW OFFICES OF
ANDREW P. SAULITIS P.C.
40 Wall Street-37th Floor
New York, New York 10005
(212) 459-0900
Fax: (212) 459-1826
Email: apslaw@msn.com

*Attorneys for Defendants*
*Brown Harris Stevens Residential Sales, LLC*
*and Brown Harris Stevens of the Hamptons,*
*LLC*

VIA ECF TO:

G. Oliver Koppell
Daniel F. Schreck
LAW OFFICES OF G. OLIVER
KOPPELL & ASSOCIATES
*Attorneys for Plaintiff Shauncy Claud*
99 Park Avenue, Suite 1100
New York, New York 10016
(212) 867- 3838