UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------x

**SHAUNCY CLAUD,**

                Plaintiff,

     —against—                           2:18-cv-01390-DRH-AKT

**BROWN HARRIS STEVENS RESIDENTIAL
SALES, LLC, and BROWN HARRIS STEVENS OF
THE HAMPTONS, LLC,**

                Defendants.

----------------------------------------------------------------------x

## DEFENDANT'S MEMORANDUM OF LAW

                              Law Offices of
                              Andrew P. Saulitis P.C.
                              *Attorneys for Defendant*
                              *Brown Harris Stevens of the Hamptons, LLC*
                              40 Wall Street-37th Floor
                              New York, New York 10005
                              (212) 459-0900
                              Fax: (212) 459-1826
                              Email: apslaw@msn.com

TABLE OF CONTENTS

Table of Authorities……………………………………………………………………iii

Facts and Evidence Presented…………………………………………………………..3

Point I: Section 1981 Context……………………………………………………….…4

Point II: The "*McDonnell Douglas*" Framework…………………………………….6

Point III: Ms. Claud Lacks Evidence to Sustain Her Burden of Proof at Trial………….13

Conclusion……………………………………………………………………….…14

# TABLE OF AUTHORITIES

**Cases**

*Abdu-Brisson v. Delta Air Lines, Inc.,* 239 F.3d 456 (2d Cir. 2001) .................................. 7

*Agugliaro v. Brooks Bros., Inc.,* 927 F. Supp. 741 (S.D.N.Y. 1996)……………………10

*Ameti ex rel. United States v. Sikorsky Aircraft Corp.,* 289 F. Supp. 3d 350
 (D. Conn. 2018) ................................................................................................... 9

*Anderson v. Hertz Corp.,* 507 F. Supp. 2d 320 (S.D.N.Y. 2007), *aff'd*, 303 Fed.
 App'x 946 (2d Cir. 2008)……………………………………….………......9, 12

*Argueta v. N. Shore Long Island Jewish Health Sys.*, No. 01 Civ. 4031 (JG),
 2003 U.S. Dist. LEXIS 20456 (E.D.N.Y. Nov. 6, 2003) ...................................... 10

*Arnow v. Aeroflot Russian Airlines,* 980 F. Supp. 2d 477 (S.D.N.Y. 2013) ...................... 10

*Brown v. City of Oneonta, N.Y.,* 221 F.3d 329 (2d Cir. 2000) ............................... 4-5, 6 n.2

*Byrne v. Telesector Res. Grp., Inc.,* 339 F. App'x 13 (2d Cir. 2009) ................................ 8

*Cancel v. Home Depot,* 488 F. App'x 520 (2d Cir. 2012), *aff'g* No. 10-CV-0846
 (RRM) (LB), 2011 U.S. Dist. LEXIS 946391 (E.D.N.Y. Aug. 24, 2011) ........ 6 n.2

*Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) ......... 13

*Davis v. State Univ. of N.Y.,* 802 F.2d 638 (2d Cir. 1986) ................................................. 8

*Dister v. Cont'l Group, Inc.,* 859 F.2d 1108 (2d Cir. 1988) ......................................... 8, 11

*Domino's Pizza, Inc. v. McDonald,* 546 U.S. 470, 126 S. Ct. 1246,
 163 L. Ed. 2d 1069 (2006) ............................................................................... 4, 5

*Edwards v. Jericho Union Free Sch. Dist.,* 55 F. Supp. 3d (E.D.N.Y. 2014) ................... 11

*Esar v. JP Morgan Chase Bank N.A.*, No. 15-CV-382 (NGG) (PK), 2018 U.S. Dist.
 LEXIS 75199 (E.D.N.Y. May 2, 2018) ............................................................... 13

*Fisher v. Vassar Coll.,* 114 F.3d 1332 (2d Cir. 1997) ......................................................... 8

*Francis v. Runyon,* 928 F. Supp. 195 (E.D.N.Y. 1996) .................................................... 10

*Gallo v. Prudential Residential Servs.,* 22 F.3d 1219 (2d Cir. 1994) .................................. 9

*General Bldg. Contractors Ass'n v. Pennsylvania,* 458 U.S. 375, 102 S. Ct. 3141 (1982) ........................................................................................................................ 6 n.2

*Graefenhain v. Pabst Brewing Co.,* 827 F.2d 13 (7th Cir. 1987) ........................................ 11

*Gregory v. Daly,* 243 F.3d 687 (2d Cir. 2001) .................................................................. 12

*Henry v. Daytop Village, Inc.,* 42 F.3d 89 (2d Cir. 1994) .................................................. 10

*James v. N.Y. Racing Ass'n,* 233 F.3d 149 (2d Cir. 2000) ................................................. 13

*Lantheus Med. Imaging, Inc. v. Zurich Am. Ins. Co.,* 255 F. Supp. 3d 443 (S.D.N.Y. 2015) .................................................................................................... 13

*Lizardo v. Denny's, Inc.,* 270 F.3d 94 (2d Cir. 2001) ........................................................ 11

*McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973) ................................................................................................... 6, 13

*Michaelidis v. Berry*, No. 08-CV-805S, 2011 U.S. Dist. LEXIS 143738 (W.D.N.Y. Dec. 12, 2011) ....................................................................................... 5

*Mont. v. First Fed. Sav. & Loan Ass'n of Rochester,* 869 F.2d 100 (2d Cir. 1989) ......... 11

*Neita v. Precision Pipeline Sols.*, No. CV 15-649 (JS) (AKT), 2018 U.S. Dist. LEXIS 32898 (E.D.N.Y. Feb. 26, 2018) .............................................................. 12

*Patterson v. County of Oneida, N.Y.,* 375 F.3d 206 (2d Cir. 2004) ............….….4, 6 n.2, 7

*Polito v. Tri-Wire Eng'g Sol., Inc.,* 699 F. Supp. 2d 480 (E.D.N.Y. 2010) ................... 7 n.3

*Quaratino v. Tiffany & Co.,* 71 F.3d 58 (2d Cir. 1995) ....................................................... 8

*Randolph v. CIBC World Mkts.*, No. 01 Civ. 11589 (RWS), 2005 U.S. Dist. LEXIS 4839 (S.D.N.Y. Mar. 29, 2005) ............................................................... 10

*Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 120 S. Ct. 2097 (2000)…………..9

*Risco v. McHugh,* 868 F. Supp. 2d 75 (S.D.N.Y. 2012) .................................................... 12

*Ruiz v. County of Rockland,* 609 F.3d 486 (2d Cir. 2010) ............................................. 6, 7

*Saint Francis College v. Al-Khazraji,* 481 U.S. 604, 95 L. Ed. 2d 582,

107 S. Ct. 2022 (1987) ...................................................................................... 6 n.2

*Seils v. Rochester City Sch. Dist.,* 192 F. Supp. 2d 100 (W.D.N.Y. 2002),
    *aff'd*, 99 F. App'x 350 (2d Cir. 2004) ...................................................... 7 n.3

*Stern v. Trs. of Columbia Univ.,* 131 F.3d 305 (2d Cir. 1997)………………….. 9, 10

*Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 67 L. Ed. 2d 207,
    101 S. Ct. 1089 (1981) .................................................................................. 8

*Tolbert v. Queens College,* 242 F.3d 58 (2d Cir. 2001) .................................... 6 n.2

*Toussaint v. N.Y. Dialysis Servs.,* 706 F. App'x 44 (2d Cir. 2017)………………….6

*Wallen v. Teknavo Grp.*, No. 12-CV-6196-MKB-SJB, 2018 U.S. Dist.
    LEXIS 30764 (E.D.N.Y. Feb. 22, 2018) ..................................................... 11

**Statutes and Rules**

42 U.S.C. § 1981 ................................................................................. 1, 4, 5, 6, 14

42 U.S.C. § 1981 (a) ............................................................................................ 4 n.1

42 U.S.C. § 1981 (b) ............................................................................................ 4 n.1

Fed. R. Civ. P. 56 ............................................................................................... 1, 14

Fed. R. Civ. P. 56 (c) (1) ...................................................................................... 3

Andrew P. Saulitis
LAW OFFICES OF
ANDREW P. SAULITIS P.C.
*Attorneys for Defendant*
*Brown Harris Stevens of the Hamptons, LLC*
40 Wall Street-37th Floor
New York, New York 10005
(212) 459-0900
apslaw@msn.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x

**SHAUNCY CLAUD,**

                              Plaintiff,

                                                                 2:18-cv-01390-DRH-AKT

    —against—

**BROWN HARRIS STEVENS RESIDENTIAL
SALES, LLC, and BROWN HARRIS STEVENS OF
THE HAMPTONS, LLC,**

                              Defendants.

-------------------------------------------------------------------x

## <u>DEFENDANT'S MEMORANDUM OF LAW</u>

This memorandum is submitted on behalf of defendant Brown Harris Stevens of the Hamptons, LLC ("BHSH") in support of its motion for summary judgment pursuant to Fed. R. Civ. P. 56 in this case of alleged discrimination brought by plaintiff Shauncy Claud, a former real estate salesperson (an independent contractor), under 42 U.S.C. § 1981, which protects against race discrimination in the making and enforcement of contracts.

After an uneventful eight months, Ms. Claud's association with BHSH was

terminated by a BHSH senior executive after receiving a distraught complaint from a brokerage client and her daughter of rude and bullying treatment from Ms. Claud in connection with a property sale listing.

After completion of discovery, this case is ripe for summary judgment because, under the applicable "*McDonnell Douglas*" burden-shifting framework, Ms. Claud has no admissible evidence that her termination was a pretext and that her race (African-American) was the "real" reason for it. She relies, instead, on speculation, drawing on perceived slights in the workplace, and on the facile notion that she being the "only African-American salesperson" at BHSH, that anything and everything that happened to her was the product of discrimination.

Unaware of the client complaint behind her termination, Ms. Claud brought this case on the mistaken belief that she had been terminated because she had been arrested weeks earlier for a disturbance at a bar (smashing a tip jar), postulating that non-African-American salespersons who also had been arrested in the past were not terminated, thus to claim disparate treatment on account of being African-American. *See* Compl. ¶¶ 36, 39, 41-42 ("Upon information and belief, Plaintiff was terminated from her position at the Hamptons Office under the pretext of having been arrested" and that "[o]ther similarly situated non-African American agents, however, did not receive the same treatment as Plaintiff after having been arrested.").

When Ms. Claud discovered that her arrest was not at all the reason, she scrambled to find another theory to support a discrimination claim, relying on perceived slights over

the course of her association, which, according to her, must have been because of her race. Those are merely distractions. She cannot avoid, and has admitted, that she had an "unpleasant" phone conversation with a client and her daughter, in which she admittedly hung up on them; and it is undisputed that the client and daughter immediately called and complained about Ms. Claud's conduct to a BHSH senior executive, who terminated Ms. Claud's association the next day, as was BHSH's right under the parties' contract. Ms. Claud would second-guess whether her complained-of conduct should have warranted termination, but second-guessing an executive's business judgment is not an occasion to perpetuate a discrimination claim under the applicable standards. In short, Ms. Claud does not have admissible evidence to prove that the client complaint did not happen, that it followed an admittedly "unpleasant" interaction, and that it resulted in her termination. Nor does Ms. Claud have any admissible evidence that any of this was the product of intentional racial discrimination. The applicable legal principles are discussed below, under which, we submit, summary judgment is warranted.

<u>Facts and Evidence Presented</u>

The undisputed facts are recited in the accompanying Statement of Material Facts pursuant to Fed. R. Civ. P. 56 (c) (1) and Local Civil Rule 56.1 (a) and (d), in the declaration of BHSH's Executive Managing Director Aspasia G. Comnas (who made the decision to terminate Ms. Claud's association), admissions made by Ms. Claud in response to BHSH's Request for Admission and admitted documents including Ms. Claud's Independent Agent Agreement, the client's exclusive listing agreement and

termination notice, and admissions made Ms. Claud's deposition regarding the "unpleasant" interaction she had with the client and her daughter that led to their complaint to Ms. Comnas.

## Point I

## Section 1981 Context

This case is under a post-Reconstruction civil rights statute codified at 42 U.S.C. § 1981[1] and not Title VII (since it does not involve an employment relationship, but a contractual one). Section 1981 "outlaws discrimination with respect to the enjoyment of benefits, privileges, terms, and conditions of a contractual relationship." *Patterson v. County of Oneida, N.Y.*, 375 F.3d 206, 224 (2d Cir. 2004) (citing *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 68-69 (2d Cir.2000)); *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 477, 126 S. Ct. 1246, 163 L. Ed. 2d 1069 (2006) (observing that Congress, in 1991, amended § 1981 to encompass race discrimination in the performance of contracts).

To establish a Section 1981 claim, a plaintiff must demonstrate (1) that he or she is a member of racial minority; (2) that there was an intent to discriminate on the basis of race by the defendant; and (3) that the discrimination concerned one or more of the

---

[1] 42 U.S.C. § 1981 (a) provides: "All persons within the jurisdiction of the United States shall have the same right in every State … to make and enforce contracts, … and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, …." 42 U.S.C. § 1981 (b) provides: "For purposes of this section, the term 'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."

activities enumerated in the statute. *See Brown v. City of Oneonta, N.Y.*, 221 F.3d 329, 339 (2d Cir. 2000); *Michaelidis v. Berry*, No. 08-CV-805S, 2011 U.S. Dist. LEXIS 143738, *9 (W.D.N.Y. Dec. 12, 2011). "Those enumerated activities include the rights 'to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property.'" *Brown v. City of Oneonta*, 221 F.3d at 339 (quoting 42 U.S.C. § 1981(a)).

The only contract here is an Independent Agent Agreement (Comnas Decl. Ex. A), the same as for all salespersons at BHSH (Comnas Decl. ¶ 3), which provides that "[t]his Agreement and the association created thereby may be terminated by either party thereto at any time for any or no reason upon written notice given to the other." Comnas Decl. Ex. A (IAA ¶ 12).

In her complaint, Ms. Claud includes a litany of circumstances that are decidedly extra-contractual or non-contractual, and therefore immaterial to a Section 1981 claim. *E.g.*, Compl. ¶¶ 14-49 (Saulitis Decl. Ex. D). "[A] plaintiff cannot state a claim under § 1981 unless he has (or would have) rights under the existing (or proposed) contract that he wishes 'to make and enforce.'" *Domino's Pizza, Inc. v. McDonald*, 546 U.S. at 479-80.

Here, virtually nothing Ms. Claud alleges happened to her (other than termination) has anything to do with what is contained in the Independent Agent Agreement, nor does she claim that such agreement was breached in the slightest way, nor that she was prevented from enforcing it. Indeed we are hard-pressed to discern anything in her complaint that amounts to impairment, on the basis of her race, of her the

right "to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property" as protected by Section 1981. Thus the contractual elements of Ms. Claud's claims need to be distilled from her overall narrative, which obscures the contractual elements.

## Point II

## The "*McDonnell Douglas*" Framework

While the scope of available claims under Section 1981 is narrower than under Title VII,[2] the "*McDonnell Douglas*" burden-shifting framework is similarly applied in the summary judgment setting: "On summary judgment, claims for race discrimination under . . . 42 U.S.C. § 1981 are analyzed under the familiar burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)." *Toussaint v. N.Y. Dialysis Servs.*, 706 F. App'x 44, 45 (2d Cir. 2017) (citing *Ruiz v. County of Rockland*, 609 F.3d 486, 491 (2d Cir. 2010) (summary

---

[2]Very often, employment discrimination plaintiffs include Section 1981 claims along with Title VII claims, since the employment relationship is also contractual, and thus the two are analyzed in parallel. But substantively, Section 1981 itself is considerably more circumscribed. Key differences are that a Section 1981 claim involves only race and requires proof of *intentional* discrimination, and that a "disparate impact" theory is unavailable under § 1981. *Patterson v. County of Oneida*, 375 F.3d at 226 ("although . . . a Title VII claim may be established through proof of a defendant's mere negligence, without a showing of discriminatory intent, . . . a plaintiff pursuing a claimed violation of § 1981 . . . must show that the discrimination was *intentional*.") (citing *Tolbert v. Queens College*, 242 F.3d 58, 69 (2d Cir. 2001) and *Saint Francis College v. Al-Khazraji*, 481 U.S. 604, 613, 95 L. Ed. 2d 582, 107 S. Ct. 2022 (1987)); *General Bldg. Contractors Ass'n v. Pennsylvania*, 458 U.S. 375, 389, 102 S. Ct. 3141, 3149 (1982) ("§ 1981 reaches only *purposeful* discrimination . . . .") (emphasis added); *Brown v. City of Oneonta*, 221 F.3d at 339 ("Section 1981 . . . only prohibits intentional racial discrimination") (citing *General Building Contractors Ass'n v. Pennsylvania*, 458 U.S. at 391); *Cancel v. Home Depot*, 488 F. App'x 520, 521 (2d Cir. 2012) ("[A] disparate-impact theory . . . is not a valid basis for a § 1981 claim.") (citing *General Bldg. Contractors Ass'n, Inc. v. Pennsylvania*, 458 U.S. at 383-91) (alterations in original) (summary order), *aff'g* No. 10-CV-0846 (RRM) (LB), 2011 U.S. Dist. LEXIS 946391 (E.D.N.Y. Aug. 24, 2011).

order).

"Under that framework, once a plaintiff who lacks direct evidence of discrimination establishes a prima facie case, the burden of production shifts to the defendant to 'offer a legitimate nondiscriminatory reason for the termination.'" *Id.* (quoting *Ruiz*, 609 F.3d at 491-92).[3] "If the defendant is able to do so, the plaintiff must show that the defendant's proffered reason was a pretext for discrimination." *Id.* (citing *Ruiz*, 609 F.3d at 492); *see also Patterson v. Cnty. of Oneida*, 375 F.3d at 225.

And as with Title VII cases, it is "beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases." *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001).

First off, Ms. Claud needs to meet her initial burden, though it remains questionable whether "the circumstances surrounding that [adverse] action give rise to an inference of . . . discrimination" even under the "*de minimis*" threshold are present, *id.*, which has been a moving target here, after her "arrest" theory foundered. If she meets that threshold, BHSH's proffered "legitimate nondiscriminatory reason for the termination" of the contract, already established, is "that [BHSH] had received a credible complaint on June 29, 2017 from a client regarding Ms. Claud's rude conduct toward the client and a family member [the client's daughter], which jeopardized the client

---

[3]The "burden of showing a legitimate non-discriminatory reason for [defendant's] actions is not a particularly steep hurdle. It is not a court's role to second-guess an employer's personnel decisions, even if foolish, so long as they are non-discriminatory. *See Seils v. Rochester City Sch. Dist.*, 192 F. Supp. 2d 100, 111 (W.D.N.Y. 2002) (citing, inter alia, *Meiri*, 759 F.2d at 995 (2d Cir. 1985)), *aff'd*, 99 F. App'x 350 (2d Cir. 2004)." *Polito v. Tri-Wire Eng'g Sol., Inc.*, 699 F. Supp. 2d 480, 491 (E.D.N.Y. 2010).

relationship," Ans. ¶ 71 (Saulitis Decl. Ex. E), which is buttressed by the declaration of Ms. Comnas, the executive who effected the termination. Comnas Decl. ¶¶ 10-12 (describing circumstances). (The evidence of the client complaint is, so far, uncontroverted.)

An "employer need not prove . . . that it made the wisest choice, but only that the reasons for the decision were nondiscriminatory." *Davis v. State Univ. of N.Y.*, 802 F.2d 638, 641 (2d Cir. 1986). Upon such a showing, a court may not second-guess the wisdom of the business decision. *See Dister v. Cont'l Group, Inc.*, 859 F.2d 1108, 1116 (2d Cir. 1988) ("Evidence that an employer made a poor business judgment . . . is insufficient to establish a genuine issue of fact as to the credibility of the employer's reasons."); *Byrne v. Telesector Res. Grp., Inc.*, 339 F. App'x 13, 17 (2d Cir. 2009) (same).

Then, we get to the crux: Once "the defendant articulates a non-discriminatory reason," as BHSH has done here, "'the presumption raised by the prima facie case is rebutted, and the factual inquiry proceeds to a new level of specificity.'" *Fisher v. Vassar Coll.*, 114 F.3d 1332, 1336 (2d Cir. 1997) (quoting *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 255, 67 L. Ed. 2d 207, 101 S. Ct. 1089 (1981) (footnote omitted)). The burden shifts to Ms. Claud to prove that the "proffered reason" be false and that race discrimination was the "real" reason. *See Quaratino v. Tiffany & Co.*, 71 F.3d 58, 64 (2d Cir. 1995) ("An employer's reason for termination cannot be proven to be a pretext for discrimination unless it is shown to be false and that discrimination was the real reason.").

The evidence of pretext must be *admissible*. *Stern v. Trustees of Columbia Univ.*, 131 F.3d 305, 312 (2d Cir. 1997). And "[a] plaintiff may not establish pretext through mere speculation . . . ." *Ameti ex rel. United States v. Sikorsky Aircraft Corp.*, 289 F. Supp. 3d 350, 366 (D. Conn. 2018).

"Although intermediate evidentiary burdens shift back and forth under this framework, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142, 120 S. Ct. 2097 (2000) (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. at 253).

Once this point is reached, a plaintiff's speculation must give way to admissible evidence, and the "hard part" comes. It remains to be seen whether Ms. Claud can present admissible evidence that can prove BHSH's reason for termination false and pretextual and that instead, intentional racial discrimination was the "real" reason. *E.g.*, *Anderson v. Hertz Corp.*, 507 F. Supp. 2d 320, 330 (S.D.N.Y. 2007) ("To avoid summary judgment on the question of whether a defendant's purported reason for termination was pretextual, a plaintiff 'must establish a genuine issue of material fact either through direct, statistical or circumstantial evidence as to whether the employer's reason for discharging her is false and as to whether it is more likely that a discriminatory reason motivated the employer to make the adverse employment decision.'") (quoting *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1225 (2d Cir. 1994)), *aff'd*, 303 Fed. App'x 946 (2d Cir. 2008).

We know from discovery, now closed, that Ms. Claud will be hard pressed to go beyond conjecture, and various areas of conjecture have been alluded to over the course of this case, which we address briefly.

We can expect that Ms. Claud will try to reconstruct and whitewash her "unpleasant" interaction with Ms. Brown and Ms. Ham and challenge whether termination (though at-will) was justified. But that is a distraction, and not the criterion:

> Where a plaintiff has alleged that he was the victim of discrimination based on his termination for misconduct, the Second Circuit has stated that "whether or not [the plaintiff] was actually guilty of any misconduct has no bearing on the resolution of [a] disparate treatment claim . . . ." *Henry v. Daytop Village, Inc*., 42 F.3d 89, 96 (2d Cir. 1994) (affirming, in part, summary judgment for defendants on race and sex discrimination claims where plaintiff was terminated for violating employer's disciplinary code); *see also Stern [v. Trustees of Columbia Univ*., 131 F.3d 305, 312 (2d Cir. 1997)] (stating that "it is simply inappropriate for a court to act 'as a super-personnel department that reexamines an entity's business decisions'"); *Argueta v. N. Shore Long Island Jewish Health Sys*., 2003 U.S. Dist. LEXIS 20456, No. 01 Civ. 4031 (JG), 2003 WL 22670915, at *9 (E.D.N.Y. Nov. 6, 2003) (stating that "it is not the province of this Court to . . . second-guess the nondiscriminatory business decisions of private employers"); *Agugliaro v. Brooks Bros., Inc*., 927 F. Supp. 741, 743 (S.D.N.Y. 1996) (dismissing Title VII claim where plaintiff who had been terminated for cause failed to demonstrate that his former employer had acted in bad faith). *Francis v. Runyon*, 928 F. Supp. 195, 203 (E.D.N.Y. 1996) (stating that "a court is not to second-guess the defendant's judgment as long as it is not for a discriminatory reason").

*Randolph v. CIBC World Mkts*., No. 01 Civ. 11589 (RWS), 2005 U.S. Dist. LEXIS 4839, *32-34 (S.D.N.Y. Mar. 29, 2005); *Arnow v. Aeroflot Russian Airlines*, 980 F. Supp. 2d

477, 483 (S.D.N.Y. 2013) ("[T]he law is clear that courts should not second-guess an employer's reasonable business judgment regarding personnel matters.").

Put another way, "[f]ederal courts do not have a 'roving commission to review business judgments,' *Mont. v. First Fed. Sav. & Loan Ass'n of Rochester*, 869 F.2d 100, 106 (2d Cir. 1989) (quoting *Graefenhain v. Pabst Brewing Co.*, 827 F.2d 13, 21 n.8 (7th Cir. 1987)), and thus, '[e]vidence that an employer made a poor business judgment generally is insufficient to establish a question of fact as to the credibility of the employer's reasons.' *Dister v. Cont'l Grp., Inc.*, 859 F.2d 1108, 1116 (2d Cir. 1988)." *Edwards v. Jericho Union Free Sch. Dist.*, 55 F. Supp. 3d 458, 465 (E.D.N.Y. 2014).

We also expect that Ms. Claud will try to posit various instances of what she considered unfavorable workplace treatment and perceived slights. But to no avail as "[e]veryday workplace grievances, disappointments, and setbacks do not constitute adverse employment actions." *Wallen v. Teknavo Grp.*, No. 12-CV-6196-MKB-SJB, 2018 U.S. Dist. LEXIS 30764, *35 (E.D.N.Y. Feb. 22, 2018) (citing *La Grande v. DeCrescente Distrib. Co.*, 370 Fed. App'x 206, 211 (2d Cir. 2010)); *see also*, *e.g.*, *Lizardo v. Denny's, Inc.*, 270 F.3d 94, 104 (2d Cir. 2001) ("Plaintiffs have done little more than cite to their mistreatment and ask the court to conclude that it must have been related to their race. This is not sufficient."). What makes such incidents even more irrelevant is that they do not pertain to any "contractual" rights that Ms. Claud had under the Independent Agent Agreement, and thus do not pertain to a Section 1981 case.

Ms. Claud has also relied on the facile assertion that she was the "only African-

American" agent at BHSH and that anything and everything that happened to her must have been because of her race. This trope does not permit an inference of discrimination. *E.g.*, *Neita v. Precision Pipeline Sols.*, No. CV 15-649 (JS) (AKT), 2018 U.S. Dist. LEXIS 32898, *51-52 (E.D.N.Y. Feb. 26, 2018) (collecting cases); *Risco v. McHugh*, 868 F. Supp. 2d 75, 105 (S.D.N.Y. 2012) ("The fact that Risco was the only Hispanic, dark-skinned employee in the Education Center during the ten months of her employment, and her unsupported assertion that Byrd would have treated her differently if she had been a light-skinned Caucasian, [ ] does not supply sufficient evidence to establish a prima facie case of discrimination."); *Anderson v. Hertz Corp.*, 507 F. Supp. 2d at 329 (finding insufficient evidence for prima facie case where plaintiff was the only African-American at a particular site supervised by his superior for a twelve-year period), *aff'd*, 303 Fed. App'x 946 (2d Cir. 2008).

  Moreover, Ms. Claud has admitted that less than a half-hour before the client complaint was made, she had an "unpleasant" interaction with the client and her daughter over the telephone, in which she hung up on them. Claud Dep. Tr. 129:3-9; 125:12-13 (Saulitis Decl. Ex. H). While Ms. Claud may offer her own version of that three-way conversation, she will not be able to prove that an incident did not occur or that it did not result in a complaint to a senior official at BHSH on behalf of the client, or that the complaint did not result in termination the very next day, which BHSH was entitled to do, with or without cause. *See*, *e.g.*, *Gregory v. Daly*, 243 F.3d 687, 696 (2d Cir. 2001) ("An employer's dissatisfaction with even a qualified employee's performance may, of

course, ultimately provide a legitimate, non-discriminatory reason for the employer's adverse action."). And if Ms. Claud were able to surmount this formidable evidentiary burden, she would have to present some admissible evidence that Ms. Comnas bore racial animus toward Ms. Claud, *i.e.*, that she intentionally terminated her association because of her race. This case is devoid of such evidence.

**Point III**

**Ms. Claud Lacks Evidence to Sustain Her Burden of Proof at Trial**

Under standard summary judgment jurisprudence, apart from the *McDonnell Douglas* regime, "[t]he movant may discharge [its] burden by showing that the non-moving party has 'fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Lantheus Med. Imaging, Inc. v. Zurich Am. Ins. Co.*, 255 F. Supp. 3d 443, 451 (S.D.N.Y. 2015) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986))." *Esar v. JP Morgan Chase Bank N.A.*, No. 15-CV-382 (NGG) (PK), 2018 U.S. Dist. LEXIS 75199, *17 (E.D.N.Y. May 2, 2018).

Based on discovery, we submit, in this regard, that Ms. Claud does not have evidence in admissible form that could or would meet "[t]he test for summary judgment," which "is whether the evidence can reasonably support a verdict in plaintiff's favor," *James v. N.Y. Racing Ass'n*, 233 F.3d 149, 157 (2d Cir. 2000), either sustain her burden that there was racial discrimination as to her Independent Agent Agreement in violation of Section 1981, that the termination of that agreement was done on racial grounds, that

the reason for termination was "pretext" or that any other contract right was denied her on account of her race. Thus we submit that this is an appropriate case for summary judgment dismissing the complaint.

Conclusion

Plaintiff Shauncy Claud lacks evidence to sustain a claim under 42 U.S.C. § 1981 against defendant Brown Harris Stevens of the Hamptons, LLC, and the Court should grant summary judgment pursuant to Fed. R. Civ. P. 56 in favor of defendant and against plaintiff, dismissing the complaint in all respects.

Dated: July 25, 2019

Respectfully submitted,

_____
Andrew P. Saulitis

LAW OFFICES OF
ANDREW P. SAULITIS P.C.
40 Wall Street-37th Floor
New York, New York 10005
(212) 459-0900
Fax: (212) 459-1826
Email: apslaw@msn.com

*Attorneys for Defendant Brown Harris Stevens of the Hamptons, LLC*